May it please the Court, Perry Stolf on behalf of the Plaintiff Appellants, the Herberts. This is probably not the kind of issue you want to have to discuss for a long night of possible election watching, but I think this case has some very serious issues that counsel in the future could be guided by this Court in how to address diversity-based subject matter jurisdiction in connection with the first prong of 1332C1, which is the jurisdictional grant based upon where the business organization is domiciled or located. The Supreme Court's decision in Hertz v. Friend addressing this prong reasoned that a court's approach to jurisdiction should be simplistic. Now, I'm sure the Justice's thoughts on diversity jurisdiction based upon the first clause, deemed to be a citizen of any state by which it's been incorporated, must have been, well, what could be more simple? You just have to know the birthplace of the corporate entity and you've resolved that prong of jurisdictional analysis. I doubt that the Hertz Court had in mind the complexities of corporations moving around, especially insurance corporations, via re-domestication statutes. Well, given the complexities of which you speak, are there any cases where a Federal Court has evaluated whether a corporation was properly reincorporated under a relevant state law ever? I could not find any, Judge, and especially on the issue in particular of diversity jurisdiction, so that's why this Court's comments will be so helpful because we're writing on a blank slate. You don't even know the basic of whether or not the 1331 provision about, you know, the location of a corporation can be construed to embrace a company that then moved later in its lifetime. Well, but there are statutes that allow for re-domestication, which is what happened here, right? Yes. Doesn't re-domestication effectively mean that the business is reincorporated in the state where it's re-domesticated? It does if . . . I mean, we don't concede that that's what happened here, but in a proper case, yes, that's what the statutes are intended to mean. Well, that was . . . But whether that extends to 1331's grant of diversity and how you get there and analyze it, there's no case law guidance. Well, there may be no case law guidance because it is a fairly straightforward inquiry. Where's the company incorporated? And where's the company's principal place of business? There are two different bases, right, to assign citizenship of a corporation. Those are the two different bases, yes, but . . . If the company's re-domesticated, it is incorporated in the state where it's re-domesticated, correct? Yes, but it loses its incorporation and identity from the former state. Well, be that as it may, it's still incorporated in the state where it's re-domesticated. And I guess what I'm grappling with is certainly the Louisiana Department of Insurance has said you've done everything you're supposed to do. You've got a corporate headquarters or a place of business in the state, corporate office. You've done all the other things and filled out all the other forms, and we accept the filing and here's your certificate, and I'm looking at it right here. You're now organized under the laws of Louisiana. How's that different than what any court would do as far as finding out the place of incorporation? Well, in the first case here, you have the other unusual circumstance of directly competing, conflicting documentation in Florida. You've got a company that's saying its principal place of business is in Florida, and to have gotten re-domesticated, they've got to say my principal place of business is in Louisiana, right? No. And that's where your argument is focused, right? No. Judge, the first prong deals with Florida. I think Florida is the place you look. Florida is the birthplace of that corporation. So for Louisiana to adopt it, Florida has to release it and approve. And in the insurance world, it's even more important because one state has to assume regulatory control of that insurance entity in setting premiums, in taking care of insurance. So I think the district court here, A, got it backwards by looking at the Louisiana documentation first and not going to Florida, or alternatively, erred in completely ignoring Florida and letting some kind of discovery process move forward that would have provided more information about what was going on with these two sets of directly conflicting documents. Well, as I apprehend your argument, though, what the argument is is that, well, when you were applying to be re-domesticated in Louisiana, you represented that your principal place of business would be Louisiana, right? I mean, isn't that what the statute requires? When you did what, Judge? When you're re-domesticating in Louisiana, I thought the statute said that you had to state that your principal place of business was in Louisiana. That's part of what you have to end up with in order to get approved for the re-domestication. But before that, you have other paperwork requirements, and you have approval from Florida that's necessary. Well, you have all those things, and the Louisiana Department of Insurance has said, okay, you've met them. Doesn't that mean they're incorporated in the state? I mean, why would the district court need to go to Florida at all? No, for two reasons it doesn't. So, if you didn't comply with the statute, and in this case, instead of the Florida filings, getting ahead to the language of 2275, is that you had to establish your principal place of business in Louisiana. And in this case, no one's really even suggesting that that was accomplished. But the Louisiana Department of Insurance has suggested it. The Louisiana Department of Insurance doesn't have a way to go out and check, and I don't think the Louisiana Department of Insurance can also override whatever the Supreme Court tells us is the proper way to analyze diversity jurisdictions. Well, here's my broader question, I guess. How does the district court override what the state regulatory agency has said has been met according to the statute? In this case, all it would have to have done was to say, Progressive, you represented, in Florida, an official filings that are still in place, signed by the same officers . . . All right, but here's the . . . You represented that your principal place of business and your state of domicile . . . Here's the broader question. Where's the line? Are we now going to get into discovery-related litigation for every document filed in the Secretary of State's office, every annual report that a company files, wherever they file it? I certainly hope you're not going to run into a lot of situations where corporations in their official document filings have stated completely different things, especially in the context of people with hurricane losses. I said, have you ever searched the Secretary of State's website about a particular company? A lot of times. I submit to you that there are plenty of contradictory statements, or at least statements with ambiguity that would justify piercing whatever the agency has done or said, probably way more commonly than not. Maybe I'm wrong about that, I don't know. But again, where's the line? It's not just insurance companies we'd get into this. We'd basically go behind . . . we'd be asking district courts to go behind any incorporation documents that were not where we wanted it to be, et cetera, and so forth. Both jurisdictions, both Florida and Louisiana, and it's pretty much part of an NAIC uniform act, have provisions requiring the approval by the releasing state. Had that happened here, then the insurance would have known, because they wouldn't have made the mistake by going to the Florida Secretary of State's website and seeing that the principal place of business and domicile were in Florida, because there would have been a document that would have said, we're in the process of transferring this corporation to the state of Louisiana. At least we're going to try and do that, if the regulator will permit it. Where in the record has Progressive claimed it was incorporated in Florida after April of 2022? We have in the record, I'll give you the site, the filing that was immediately before the lawsuit. It was the annual report filing in Florida. It is at . . . It's dated what? ROA 173. We did the 2023 . . . What date is it? The 2023 filing. It's the same in 2024. It hasn't changed, and it's signed by the exact same officers that execute the documents to re-domesticate the corporation to the . . . Is there any evidence in the record to support the argument that Progressive re-domesticated to Louisiana as Hurricane Ida was approaching, specifically in order to avoid diversity jurisdiction? Is there anything in the record that supports that allegation? That's one of those things we . . . I mean, we couldn't possibly know. We can only see the dates, and you can see the form of the documents. The answer is no, because it would be very difficult to have that. It's uniquely in the possession of the insurer. Then the last question I have is, to me, this case is somewhat puzzling in a big picture. I think that Henry Friendly would be puzzled by this because of the idea of diversity. The Herberts want to be in federal court, and the company that allegedly is in the same state . . . Isn't it unusual? . . . wants to be in the state court. I don't . . . That's a very odd scenario. The whole idea of diversity jurisdiction was that companies from other states didn't want to be hometowned in the state courts, was the premise of it. I mean, some of the studies show that wasn't occurring, and that people were treated very fine in state courts at the time of the founding and later. But it's just . . . it's a very unusual situation about who wants to be where, and is there anything in the record about this or not? It is very unusual, and again, it's information uniquely in their possession. But reading between the lines, I think you can say that somebody didn't want to be in federal court for whatever reason, and setting it up this way . . . No, but did you and the gentleman . . . . . . setting it up this way . . . . . . y'all want to be in federal court, though. Yeah, well, we did. Setting it up this way left it . . . well, because we thought we'd get removed anyway. So, you know, they were trying to speed up the process. No, but gosh, you filed a motion to reconsider, and I mean, you were fighting to be in federal court, not just, well, we thought we'd be removed. I filed a motion to reconsider on what, Your Honor? I thought you filed a motion to reconsider, and you actually contested the finding of no diversity and all that sort of thing. You requested discovery on it, to try to keep it in federal court, presumably? Yes, we wanted to be in federal court. Well, that's more than just saying, well, we started in . . . We were diverse. That's more than just saying we started in federal court, because we knew we'd end up there anyway. Well, we thought that it would save a lot of time. Well, they're spending a lot of time on this, though. Yes, I know. Okay. Do you have anything further? You have a little more time. You asked about the information about Ida, and so you got the date, August 26th. Then you get this document that's just entitled a written action without a meeting by unanimous written consent on that date. A kind of unusual way to say we're going to completely transfer our business to another jurisdiction. That set of facts, while looking suspicious, it also ignored the Florida birthplace documents. I think that might be what caused the court to look instead to Louisiana, and having been organized under Florida's laws, it should be that state's records that are as important and should have been looked at. The statute that requires the approval of Florida, Louisiana has the same thing, like I said, all states do, is 628, their title 628, section 525. Any domestic insurer may, upon approval of the office, transfer its domicile to another state in which it is admitted. It goes on to say that that process is not completed until the transfer is approved. And there was no evidence of such a transfer here. It's my understanding that Louisiana used to allow the AG to sue to revoke the articles of a corporation if it was determined that it wasn't properly done and that there was a concern that they didn't comply with the conditions to be able to be incorporated. But that's been repealed in the Louisiana revised statutes business corporate law, is that correct? And so can the AG still, is the AG the right person to be going about saying this person shouldn't be on our corporate roles rather than the courts, given right now in this state? I don't know, but the way I would look at it is the reverse. I would say the court is the proper arbiter of diversity jurisdiction, the existence of diversity jurisdiction. Well, this is not about a diversity, I was asking about whether the person should have been incorporated there to begin with. Should they, because they are incorporated in Louisiana. They're absolutely incorporated in Louisiana. And if it's wrong, then who can look behind it? Well, the question about incorporation isn't just, it's also time sensitive because of the date of filing. We're going to look at where someone was a citizen on the date of filing of the lawsuit. So we don't have that information either to know. The other point, and I just have a few seconds, but I wanted to allude to, was the use in 2275 of the language requiring a principal place of business. So there were two suggestions to avoid that. The court's was not only that it had been, I won't have time to finish. I'll come back and raise the point later. Thank you. We have your argument and you've saved time for rebuttal. Ms. Cappen? Yes, Cappen. Good afternoon, may it please the court. Tina Cappen on behalf of Appalee's Progressive Property Insurance Company and ASI Lloyds and Council. I think your Honor's questions kind of hit the nail on the head. There is no dispute here that the record evidence absolutely establishes, according to the Department of Insurance, that Progressive was incorporated in the state of Louisiana as of the time of the suit filing. The question becomes, as the court aptly noted, whether or not the Louisiana Department of Insurance certification of that incorporation can be undone or nullified by this court. And I submit the answer is no. Well, the problem you've got is you've said more recently that the principal place of business is in Florida, not Louisiana. Well, I think that there's a distinction here, especially if we look at the statute with 1332. 1332 talks about a principal place of business that the corporation has in a particular state. Conversely, 2275 talks about the condition being fulfilled whereby the corporation designates principal place of business within the state. And I would submit that at the time that the Progressive reincorporated in the state of Louisiana, it absolutely had designated a principal place of business within the state of Louisiana. Well, it calls it a resident office or what have you in the documents, right, by the LDI and by the insurance company's filings. But does principal place of business have a term of art meaning that would carry from Florida to Louisiana to general statutes that refer to the term? I don't believe so, Your Honor. I haven't found anything. And I would also submit that although plaintiffs attempted to answer that question in their reply brief, unfortunately, the statutes that they rely upon are an opposite. In particular, they seek to rely on 2246.12 for the definition of home state. That only applies to surplus lines insurers, that Progressive's not a surplus line insurer. And secondarily, they attempt to rely on the definition of principal place of business under Louisiana revised statute 22512. 22512, which sets forth definitions, applies that it only applies to that particular subpart, which pertains to title insurance. Here we're not concerned with title insurance. So technically, the Louisiana Insurance Commissioner can evaluate whether or not the designation of a principal place of business was satisfied at the time that it certified reincorporation. And I would submit that, in fact, that's exactly what the Louisiana Insurance Commissioner did. There was nothing hasty about this process. While it's true that Progressive entered into a unanimous consent in August of 2021 to undertake efforts to relocate and re-domesticate in Louisiana, that process took an incredibly long time. They amended their articles of incorporation under Louisiana revised statute pertaining to business incorporation. They submitted that to the Department of Insurance. The Department of Insurance did not approve that for recordation with the Jefferson Parish Registrar for two months. Even after it was recorded, it still took an additional two months until December 28th of 2021 for the Louisiana Department of Insurance to issue a certification stating that Progressive had incorporated in the state of Louisiana. Thereafter, Progressive still didn't have authority to write as a domestic insurer until April of 2022. Thus, this was a very lengthy process. And I think what we need to evaluate here is that we're looking for a simple process to discern when a corporation has reincorporated. That authority is vested in the state of Louisiana with the Department of Insurance. We have to presume that between the months of August of 2021, when Progressive started this process, and April of 2022, when the Louisiana Department of Insurance certified the process was complete, and that Progressive had complied with all of its obligations, that there was due diligence happening. There's nothing in the record to suggest that due diligence didn't happen to establish that the Department of Insurance thought both conditions were actually satisfied. And I'd also like to address the notion that there's completing or conflicting documents here as it relates to the filing of the annual report. That particular annual report, at best, is merely a document that indicates some sort of compliance with Florida law. It is not a document that identifies citizenship for two reasons. First, that document is silent as to where Progressive's state of incorporation is located. You're talking about an annual report? I am. Yeah, it's filed with the Secretary of State, right? It is filed with the Secretary of State, but it's titled a Florida Corporation Annual Report. And it talks of a profit corporation annual report. There's no evidence in the record to suggest that that particular annual report is filed in connection with an entity that is incorporated in the state of Florida. I was going to ask whether the Secretary of State's office is the regulatory body over insurance companies in Florida. It is not. Actually, and it's not in the record, unfortunately. But if you go to the Florida Department of Insurance, it actually establishes that Progressive reincorporated in the state of Louisiana and is a foreign insurer. That would have been something you should have had in your brief, don't you? I wish it- For us to take notice of or something? Sure, I appreciate that. But that's the honest answer, is that there is a Florida Department of Insurance document available in the public domain that establishes that Progressive is, in fact, an insurer incorporated in the state of Louisiana. With regard to the Secretary of State report that you were talking about, does any corporation that does business in Florida have to file that? That I don't know. But what I- Who has to file that report? I do not know, Your Honor. I asked those questions, and unfortunately, I don't think I got to the right person. And unfortunately, I was also involved in asking those questions after the briefing had already occurred in the state court. So I do not know. That said, what I do know is that the Hertz Court itself rejected the notion that a compliance document that merely identifies principal place of business can somehow be used to establish citizenship. Specifically, the Hertz Court rejected the notion that the mere filing of a listing of principal offices without more is sufficient to establish a principal place of business under the Nerve Center Test. And moreover, Justice Murray, out of the Louisiana Fourth Circuit, in the White versus Energy Gulf States decision cited by my opponent, quoted this court's decision in Harris versus Black-Cawson, which confirmed, quote, a corporation's statements made to the secretary of state of a particular state are not binding for purposes of determining subject matter jurisdiction. Isn't it true? I mean, maybe a generalization, but states require annual reports for companies doing business in the state, whether they're domestic or foreign companies. I believe that generally to be true, but if you actually look at the website that was identified in my opponent's reply brief, it was the UCAA, some sort of compliance document through the Louisiana Department of Insurance, and one of their footnotes. If you actually look at that and you dig down within that website, it specifically says that insurers are not to file documents in the state of Louisiana with the secretary of state. I do not know what the rules are in Florida to answer specifically about what Florida requires of entities that may have some business happening in that state. Remember- Presumably, Progressive is required to file something with the Florida Secretary of State. Something, and they did file the Florida corporate profit annual report, but I don't know if that's because they're required to if they're generating any profit in the state of Florida from the sale of insurance policies there. There is a document in the record from the Louisiana Department of Insurance that, taken from their website, that identifies Progressive as being domiciled in Louisiana and having a location in Metairie. That same document goes on to identify, I think it's $1.78 million of business written in Louisiana, and as to national, it identifies $1.8 something million written nationally. Which leads us to know that there is some business being done elsewhere with policies being issued. That may be the explanation for why there was a profit corporation report filed in the state of Florida. But I don't think it's for us to guess or superimpose what that report means to negate what the insurance commissioner found when the 2275 vests him with the sole discretion to determine whether or not a foreign insurer reincorporates in the state of Louisiana and becomes a domestic insurer for purposes of issuing policies. Toward that end, I know that you- The district court got anything wrong? Do you think that anything in the district court's opinion is wrong? I don't think so at the end of the day because ultimately this case hinges upon the state of incorporation rule. And it's not disputed in the record that there's evidence that Progressive in fact incorporated with the imprimatur of approval in Louisiana. Are you asking us to do any different analysis than the district court did? I am not. It is a de novo review for purposes of 12B1. It's abuse of discretion for purposes of the district court's denial of their motion for reconsideration. The same arguments were made in connection with the motion for reconsideration. I submit that the district court did not abuse his discretion in denying that motion. And under a de novo review, this case starts and stops with the fact that the state of incorporation at the time of their filing was in fact in Louisiana. Do you have anything else? I would just want to address briefly the notion of jurisdictional discovery. At the end of the day, plaintiffs allege that they're entitled to some sort of discovery. We would submit that this is wrong for a few reasons. First, the cases that they submit to the court indicate that the allowance of jurisdictional discovery is permissive, not mandatory. Meaning it's purely within the discretion of the district court. They have the burden of showing such discovery as necessary. And even then, as Judge Kane recognized in Jackson versus Progressive, they must make clear what specific facts they expect the discovery to yield. And that discovery must be narrowly tailored to the jurisdictional issues. And they can't just say it will be limited to production of select documents or certain discrete corporate topics. They have to specifically set forth that information. Finally, well, they haven't done that here. But even if they had, at the end of the day, whatever discovery they hope to find about principal place of business does not negate the fact of progressive state of incorporation and being in Louisiana on the date they filed suit. That factual discovery, if anything, about principal place of business will not change the fact of what the Louisiana Department of Insurance found. Nor will it supply this court with the authority to second guess or overlay the jurisdictional nerve center test for jurisdiction to interpreting the state court provision about re-domestication. We submit that there's no authority for this court to use the interpretation of principal place of business as a benchmark for interpreting and second guessing the Louisiana Insurance Commissioner's application and interpretation of 2275. All right, if there's no other questions, I'll yield the remainder of my time, except to say that we pray that the court affirm Judge Africk's dismissal of this matter without prejudice for lack of subject matter jurisdiction. Thank you, we have your argument. Thank you. You've saved time for rebuttal. Thank you. With respect to the issue about the annual report and not being used to determine citizenship, we introduced into the record a lot more than just the one annual report. We put the entire corporate history going back to when it first incorporated in Florida as Arc Insurance. And subsequently kept all of those domicile issues the same and unchanged in all of their filings. So the whole history of all of theirs is in there. Plus, the whole question of whether or not, what is the argument here? That, well, we weren't in Florida because the document doesn't prove anything. There's several documents in the record, including a 2017 Louisiana filing that described them as being a Florida corporation. And there wouldn't have even been a need for a domestication or a redomestication process if they weren't domiciled in some other state that would have been diverse. So it's kind of a red herring. With respect to the principle place of business language, that's what I was trying to get to in my original time. So opposing council did quote the language from 22-5-12-17, which mimics the language in Hertz. The place and defines principle place of business as the place from which the officers or other principles direct control and coordinate the entity's business activity. So if that isn't intended to be a direct implication of Hertz and its standard being incorporated into Louisiana law, then someone would need to construe the language principle place of business as it's used in 22-5-12-17. So that a question can be had to the question of whether or not this was done here. Did they establish a principle place of business? I don't know how familiar you are, but that little shop they have on Airline Highway and Suite 200 is not the five building megaplex campus that they have in Florida. Everything still comes from Florida. All the folks that signed off on all of those documents, they are all from Florida. Nobody has relocated to Louisiana, and all of the direction is clearly coming from Florida. We should have, at a minimum, been given the opportunity. I'm not saying that a court has an obligation to grant jurisdictional discovery. Only that it should recognize the situations where it is appropriate and allow it to go forward. Thank you.  Thank you. We have your argument. We appreciate both arguments. The court will stand in recess. Thank you.